**Kiersty B. Loughmiller, (12580)**
**MacDonald & Miller Mineral Legal Services, PLLC**
7090 S. Union Park Avenue, Suite 400
Salt Lake City, UT  84047
Telephone:    801-676-0050
Email:        kiersty@macmillerlegal.com
*Attorneys for Plaintiffs*

IN THE UNITED STATES DISTRICT COURT - DISTRICT OF UTAH
CENTRAL DIVISION

| | |
|---|---|
| WESTERN RANGELAND ) | |
| CONSERVATION ASSOCIATION; ) | |
| PEARSON RANCH; YARDLEY ) | |
| CATTLE CO.; RUNNIN C FAMILY ) | No. 2:14-cv-00327-PMV |
| PARTNERSHIP LP; WINTCH & CO. LTD; ) | |
| JOEL HATCH; R. LARSON SHEEP ) | |
| COMPANY LLC; MATTHEW WOOD AND ) | Judge Paul M. Warner |
| MARILYN WOOD; PLATT LIVESTOCK LLC ) | |
| SAGE VALLEY HOLDINGS; ) | |
| MICHAEL CHRISTENSEN; ) | |
| DUSTIN HUNTINGTON; ) | |
| TERRIL HUNT; MARK EVANS, ) | |
| ) | |
| Plaintiffs, ) | |
| vs. ) | |
| ) | |
| SALLY JEWELL in her official capacity as ) | |
| Secretary, UNITED STATES DEPARTMENT ) | |
| of the INTERIOR; NEIL KORNZE in his official ) | |
| capacity as Director, UNITED STATES ) | |
| BUREAU OF LAND MANAGEMENT; ) | |
| JUAN PALMA, in his official capacity as ) | |
| Utah State Director, UTAH BUREAU OF ) | |
| LAND MANAGEMENT, ) | |
| ) | |
| Defendants. ) | |

1

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND FOR MANDAMUS

*Introduction*

This case arises out of the failure of the Defendants, U.S. Department of the Interior and Bureau of Land Management (collectively "BLM"), to perform its mandatory duties to remove excess wild horses on the lands managed by BLM, "school section" lands administered by the State of Utah and on private lands pursuant to the Wild Free-Roaming Horses and Burros Act of 1971 ("WHBA").  Defendant BLM has failed to comply with its duties in this respect, and its failure has resulted in an excessive wild horse population, which has severely damaged the public and private rangeland resources and has caused damage and injury to Plaintiffs, who are private landowners and federal and state grazing permittees, and to their livestock operations, livelihoods and way of life.  Plaintiffs have filed suit to compel agency action that is required by law to immediately remove these excess wild horses from BLM, State of Utah, and private land.

## JURISDICTION AND VENUE

1.      This court has jurisdiction pursuant to 5 U.S.C. § 702 (providing for judicial review of federal agency action and failure to act under the Administrative Procedure Act), 28 U.S.C. § 1331 (providing jurisdiction over federal questions), and 28 U.S.C. § 1361 (providing for original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff).  Jurisdiction is also proper under 22 U.S.C. § 2201, because Plaintiffs seek to declare their rights and legal relations.

2.      Venue is proper in this court pursuant to 28 U.S.C. §§ 1391(b)(2) and (e)(2) because Defendants are officers or employees of the Defendant agencies of the United States government, the acts and omissions giving rise to the claims occurred in Utah, and the property that is the subject of this action is situated in Utah.

<u>**PARTIES**</u>

3.      Plaintiff Western Rangeland Conservation Association ("WRLCA") is established in Utah as an organization that is dedicated to the protection of the western landscapes, including livestock grazing.  WRLCA was originally formed by area ranchers, local governments and local businesses near the BLM Blawn Wash Herd Area ("HA") and the Frisco and Four-Mile Herd Management Areas ("HMAs") in response to the disastrous impacts that growing excess numbers of wild horses were causing to the environmental resources, as well as to local ranchers, local communities and local businesses.  Since its formation in February, 2014, the organization has grown in size to include members outside these areas, all of whom are being adversely and negatively impacted because of the BLM's failure to immediately remove excess wild horses on BLM, State of Utah and private lands in violation of the WHBA.

4.      The named individual Plaintiffs are injured and adversely affected by the Defendants' failure and refusal to perform their mandatory statutory duties to immediately remove excess wild horses from the BLM, State of Utah and private lands pursuant to the WHBA.

5.      Plaintiff Pearson Ranch is a Utah general partnership.  Pearson Ranch is a grazing permittee on the Beaver Lake Allotment, which is managed by the Cedar City Field Office of the BLM.  Part of the Beaver Lake Allotment lies within the Frisco HMA.  Pearson Ranch owns

unfenced private property in their Allotment, as well as a spring source that has been decimated by the trampling of excess wild horses. Plaintiff Pearson Ranch also has permitted grazing on lands managed by the State of Utah (State Institutional Trust Lands Administration ("SITLA")) within the BLM allotment.  There are wild horse numbers far in excess of the "appropriate management levels" ("AMLs") set by the BLM in the Frisco HMA.  These horses are grazing on Pearson Ranch's BLM grazing allotment, SITLA lands and on the private lands belonging to or used by Pearson Ranch.  These horses have consumed available forage, damaged riparian areas and damaged springs, all to the detriment of the Ranch's ability to maintain its livestock operations. There are also wild horses outside the HMA grazing on Pearson Ranch's BLM grazing allotment, SITLA lands and private lands that are causing injury to Pearson Ranch's livestock operation.

6.      Plaintiff Yardley Cattle Co. is a Utah corporation and is a grazing permittee on the Burn Knoll Allotment, which is managed by Cedar City Field Office of the BLM.  Plaintiff Yardley Cattle Company also has seven sections of leased SITLA lands within the Burn Knoll Allotment. Two of those SITLA sections have been reseeded and "spike treatment" has been applied on an additional three sections of the SITLA lands within the BLM Allotment.  However, the Plaintiff has had little use of these improvements because of grazing by excess wild horses.  The Burn Knoll Allotment is in the vicinity of the Blawn Wash HA.  There should be no wild horses on the Burn Knoll Allotment or the Blawn Wash HA.  However, there are wild horses that are grazing on Yardley Company's grazing allotment, SITLA lands and on the private lands belonging to or used by Yardley Cattle Co.  The livestock operations and grazing lands of Yardley Cattle Co. are being

severely impacted by the failure of the BLM to properly manage wild horses and to remove excess (all) wild horses from their allotment, SITLA lands and private lands.

7.      Plaintiff Runnin C Family Partnership, LP, Lyle Carter, is a Utah limited partnership and is a grazing permittee on the Waterhollow Allotment, which is managed by the Cedar City Field Office of the BLM.  The Waterhollow Allotment is just west of and adjacent to the Blawn Wash HA.  There should be no wild horses on the Waterhollow Allotment or in the Blawn Wash HA, although there are currently wild horses grazing on these lands.  The livestock operations and grazing lands of Runnin C Family Partnership are being severely impacted by the failure of BLM to properly manage wild horses and to immediately remove excess (all) wild horses.

8.      Plaintiff Wintch & Co., LTD is a Utah limited partnership and is a grazing permittee on the Wah Wah Lawson Allotment, which is managed by the Cedar City Field Office of the BLM. Part of the Wah Wah Lawson Allotment lies within the Frisco HMA.  Wintch & Co., LTD is also a grazing permittee on the Bucket Ranch Lambing Allotment, which is managed by BLM and partially lies within the Blawn Wash HA.  Wintch & Co., LTD also owns private property in the vicinity of the Frisco HMA and Blawn Wash HA.  There are wild horse numbers far in excess of the AML set by the Defendant BLM for the Frisco HMA and there should be no wild horses on the Blawn Wash HA.  The livestock operations and grazing lands of Wintch & Co. are being severely impacted by the failure of BLM to properly manage wild horses and to remove excess wild horses.

9.      Plaintiff Joel Hatch is a citizen of Utah.  Jordan and Joel Hatch have a term grazing permit for the Willow Creek Allotment, which is managed by Cedar City Field Office of the BLM. Plaintiff Hatch also leases SITLA lands within the Allotment.  The Willow Creek Allotment is located adjacent to and partially within the Frisco HMA.  There are wild horse numbers far in excess of the AML set by the BLM in the Frisco HMA that are grazing on the Willow Creek Allotment, SITLA lands and on the private lands belonging to or used by Joel Hatch.  The livestock operation and grazing lands of Joel Hatch are being severely impacted by the failure of the BLM to properly manage wild horses and to immediately remove excess wild horses.

10.      Plaintiff R. Larson Sheep Company, LLC is a Utah limited liability company and is a grazing permittee on the Frisco Allotment and the Willow Creek Allotment, which are managed by the Cedar City Field Office of the BLM.  Both allotments are located adjacent to or partially within the Frisco HMA.  There are wild horse numbers far in excess of the AML set by the BLM in the Frisco HMA that are grazing on R. Larson Sheep Company LLC's grazing allotments and on the unfenced private lands belonging to or used by R. Larson Sheep Company, LLC.  The livestock operation and grazing lands of R. Larson Sheep Company, LLC are being severely impacted by the failure of the BLM to properly manage wild horses and to immediately remove excess wild horses.

11.      Plaintiffs Matthew and Marilyn Wood are citizens of Utah and, collectively, are a grazing permittee on the Mountain Spring (also known as Bible Spring), the Lone Pine, Matheson and Wood Winter Allotments, which are managed by the Cedar City Field Office of the BLM.  These allotments are located partially within the Four Mile HMA.  Plaintiffs Wood also

6

lease SITLA lands within their BLM Allotments for livestock grazing.  There are wild horse numbers far in excess of the AML set by the BLM in the Bible Spring and Four Mile HMAs grazing on Matthew and Marilyn Wood's grazing allotments and on the private lands belonging to or used by Matthew and Marilyn Wood.  The livestock operations and grazing lands of Matthew and Marilyn Wood are being severely impacted by the failure of the BLM to properly manage wild horses and to remove excess wild horses.

12.     Plaintiff Platt Livestock LLC is a Utah limited liability company and is a grazing permittee on the Pine Valley Allotment and Bull Spring Allotment, managed by the Cedar City Field Office of the BLM.  There are wild horse numbers far in excess of the AML set by the BLM in the Four Mile HMA grazing on Platt Livestock LLC's grazing allotments.  The livestock operations and grazing lands of Platt Livestock LLC are being severely impacted by the failure of the BLM to properly manage wild horses and to immediately remove excess wild horses.

13.     Plaintiff Sage Valley Holdings is a permittee on the Indian Peak Allotment managed by the Cedar City Field Office of the BLM.  The Indian Peak Allotment is located in the Sulpher and the Choke Cherry HMAs.  Plaintiff Sage Valley Holdings owns private land and private water rights within the Indian Peak Allotment.  Plaintiff Sage Valley Holdings also leases SITLA lands for grazing within the Indian Peak Allotment.  There are wild horse numbers far in excess of the AML set by the BLM in the Sulpher HMA.  The livestock operation, grazing lands, state lands and private lands and water rights of the Sage Valley Holdings are being severely impacted by the failure of the BLM to properly manage wild horses and to immediately remove excess wild horses from this Allotment.

7

14.     Plaintiff Michael Christensen, Christensen Ranches, is a permittee on the Lone Tree Allotment managed by the Price Field Office of the BLM and the Emery C&H Allotment managed by the Manti La Sal National Forest.  Plaintiff Christensen Ranches also leases SITLA lands within his grazing allotments.  Plaintiff Christensen Ranches livestock is near the Muddy Creek HMA. There are wild horse numbers far in excess of the AML set by the BLM in the Muddy Creek HMA. The livestock operation, BLM and Forest Service grazing lands and SITLA lands are being are being severely impacted by the failure of the BLM to properly manage wild horses and to immediately remove excess wild horses from these Allotments.

15.     Plaintiff Dustin Huntington, Huntington Ranch, is a permittee on the McKay Flat Allotment managed by the Price Field Office, BLM.  Plaintiff Huntington Ranch also leases SITLA lands within this grazing allotment.  Plaintiff Huntington's livestock operation and grazing lands are being severely impacted by the failure of the BLM to properly manage wild horses in the Muddy Creek HMA and to immediately remove excess wild horses from this Allotment.

16.     Plaintiff Terril Hunt, Walking X Livestock LLC is a permittee on the SUSC Winter and the Holt Mine BLM Allotments managed by the Cedar City Field Office, and the Terry-Shoal Creek Allotment on the Dixie National Forest.  Plaintiff Walking X Livestock LLC also leases SITLA lands within this grazing Allotment.  Plaintiff owns private unfenced lands within the Allotments.  These allotments are in or near the North Hills HMA.  There are wild horse numbers far in excess of the AML set by the BLM in the Cedar City Field Office.  Plaintiff Hunt's livestock operation and grazing lands are being severely impacted by the failure of the BLM to properly manage wild horses and to immediately remove excess wild horses from these Allotments.

8

17.     Plaintiff Mark Evans ("Evans"), is a permittee on the Haystack Mountain Allotment managed by the St. George Field Office, BLM and the Terry-Shoal Creek Allotment within the Dixie National Forest.  Plaintiff Evans also leases SITLA lands within this grazing allotment. Plaintiff Evans' livestock grazing allotments are within the North Hills HMA.   There are wild horse numbers far in excess of the AML set by the BLM in the North Hills HMA.  Plaintiff Evans' livestock operation and grazing lands are being severely impacted by the failure of the BLM to properly manage wild horses and to immediately remove excess wild horses from these Allotments.

18.     Defendants Jewell, as Secretary, and the United States Department of the Interior, the BLM and its Director Kornze and Utah State Director Juan Palma are responsible for the actions and failures to act by the BLM.  BLM is charged with the management of wild horses under the WHBA and is charged, specifically, with the duty to immediately remove "excess" wild horses and burros from federal, state and private lands.

## FACTS AND LEGAL AUTHORITIES

19.     Plaintiffs each run livestock operations in Utah.  Their operations involve private property, federal rangelands and state rangelands.  Plaintiffs' grazing lands and operations are being severely degraded and impacted by the BLM's failure to perform its duties regarding wild horses, specifically its mandatory duty to immediately remove excess wild horses.

20.     Under the WHBA, "wild free-roaming horses and burros" on BLM land are under the Secretary of the Interior's jurisdiction for the purpose of management.  *See* 16 U.S.C. § 1333(a).

21.     The Secretary and BLM must inventory and determine appropriate management levels ("AMLs") of wild horses and burros, determine if overpopulation exists and "shall immediately remove excess animals from the range so as to achieve appropriate management levels (AMLs)."  *See* 16 U.S.C. § 1333(b) (1) and (2) and 43 C.F.R.  § 4720.1 ("Upon examination of current information and a determination by the authorized officer that an excess of wild horses … exists, the authorized officer shall remove the excess animals immediately…")

22.     The Secretary and BLM must establish "herd management areas" ("HMAs") for the maintenance of wild horse herds, within which to establish AMLs, considering habitat requirements and the relationships with other uses of the public and adjacent private lands.  *See* 43 C.F.R. § 4710.3-1.

23.     BLM's management objectives must accord with the "principle of multiple uses." *See* 43 C.F.R. § 4700.0-2.  "Excess animals" that must be removed are defined by reference to preserving the "multiple use relationships" in an area.  *See* 16 U.S.C. § 1332 (f).

24.     In 2013, BLM prepared a table of HMAs for Utah that shows the Defendants' determination of "excess" wild horses.  *See* Exhibit A.

25.     Exhibit A compares the AMLs, the maximum sustainable number, for each HMA with the estimated horse population in each HMA and, by this method, BLM calculates its determination of "excess" for each HMA.

26.     The HMAs with "excess" wild horses are, as of 2013, as reflected on exhibit A:

| | |
|---|---|
| North Hills | excess of 12 (36 AML vs. 48 estimated) |
| Bible Spring | excess of 61 (60 AML vs. 290 estimated) |
| Four Mile | excess of 30 (60 AML vs. 71 estimated) |
| Frisco | excess of 17 (60 AML vs. 102 estimated) |
| Muddy Creek | excess of 44 (195 AML vs. 239 estimated) |
| Swasey | excess of 37 (100 AML vs. 160 estimated) |
| Sulpher | excess of 134 (250 AML vs. 384 estimated) |
| Choke Cherry | excess of 6 (30 AML vs. 36 estimated) |

27.     Additionally, there are areas where no wild horses are to be grazing.  The Blawn Wash HA is supposed to have an AML of zero.  However the BLM estimates that in 2013, 43 wild horses were grazing in this area.

28.     Plaintiffs believe that the true number of horses in these HMAs and HAs far exceed BLM's "estimated horse population.

29.     There have been few gathers by BLM so there has been little remediation of the ever-increasing devastation to the range land, to the State and federal grazing allotments and to the private property caused by excess wild horses that Defendants have failed and refused to remove.

30.     Wild horses are not native to America's rangelands. Their vulnerability to predators is limited and their population growth rate is high. For example, BLM has estimated the growth rate of the wild horse population in the Frisco HMA at 20-25% per year.

31.     The current actual numbers of horses in the HMAs and HAs listed above exceed those estimated in 2009.

32.     Recently, Defendants wrote letters to some of the Plaintiffs on affected grazing allotments described in this Complaint, in which Defendants acknowledged the excess numbers of

wild horses within the HMAs but expressing Defendants' asserted inability and unwillingness to remove them, and requesting, instead, that the ranchers, who have livestock grazing permits for specified animal unit months ("AUMs"), voluntarily refrain from exercising their grazing privileges under their permits in order to accommodate the excess wild horses and BLM's refusal to carry out its duties to remove.  *See* Exhibits B and C (a January 27, 2014 letter to Plaintiff Wintch and a December 11, 2013 letter to Plaintiff Platt).

33.     Exhibits B and C recite, in part:

> As you are aware, all or a portion of your livestock grazing allotment occurs within one (1) of nine (9) wild horse herd management areas (HMA) or one (1) herd area (HA) that is managed out of the Cedar City Field Office (CCFO).  The current estimated population of wild horses within these HMAs and HA are above the Appropriate Management Level (AML).  It is anticipated that nationally the wild horse and burro program will not have the budget or space to give approval to remove any wild horses in fiscal year 2014.  The wild horse and burro program is anticipated a budget cut, while costs of running the program continue to increase.  There currently is no place to put horses removed from the range as wild horse and burro holding facilities are filled to capacity.  Although this situation may change, the CCFO must plan for no wild horse gathers or removals in FY 2014.
>
> In order to manage the public land resources of healthy rangelands we would appreciate and encourage you to evaluate your livestock operation and allotment, review your options and make adjustments to livestock numbers so as to keep your use within the wild horse HMAs and HA **below 50% of permitted [livestock] AUMs.**

(Emphasis in original).

34.     Similarly, Plaintiff Wood has received letters from the BLM regarding the use of his allotments by wild horses.  On January 18, 2013, the Defendants admitted to Mr. Woods that there were excess wild horses on the Bible Springs and Four Mile HMAs and that "the Bible

Springs complex [was] a top two areas for a gather and removal." *See* Exhibit D. Just nine months

later, Mr. Wood was informed that "In order to manage the public land resources of healthy

rangelands we would appreciate and encourage you to evaluate your livestock operation and

allotment, review your options and make adjustments to livestock numbers so as to keep your use

within the wild horse HMAs and HA **below 50% of permitted [livestock] AUMs.**" (Emphasis

in Original). *See* Exhibit E.

  35. As reflected in Exhibit F, Defendants' November 7, 2013 letter to Iron County

Commissioner Adams, BLM acknowledges the problems caused by excess wild horses but is

refusing to perform its duties to remove excess wild horses.

  36. Exhibit D recites, in part:

> We share your concerns [respecting the wild horse populations in BLM
> managed areas] regarding sustainability, impacts and potential conflicts
> with livestock grazing. As you are aware, permittees have received letters
> informing them of the current situation and the potential lack of forage in
> an effort to communicate early on a situation that may impact their
> operations. In order to maintain healthy rangeland conditions, we are in a
> position in which we must consider adjustments to livestock use for this
> year's grazing season. Currently we have no means to adjust horse numbers
> back to appropriate management levels within the Four Mile Herd
> Management Area (HMA).
>
> [T]he BLM is facing tremendous challenges with the increasing horse
> populations, and decreasing funding for gathers and holding. At this time
> funding and holding space are limited, and no horse gathers are approved
> for the 2014 fiscal year in Utah, nor other areas within the BLM. While
> wild horse management policies have not changed, we have no means to
> maintain numbers at appropriate management levels (AML). We are
> hopeful that this changes very soon; however, in the short-term there may
> be declines in Rangeland Health if management remains status quo.
> (Emphasis added).

37.     Plaintiffs' livestock operations are being negatively impacted by both the excess numbers and geographical spread of the wild horse population. The population far exceeds AMLs, and the horses do not stay within the boundaries of the designated areas. Impacts of the excessive population include reductions in forage on private, state, and federal pastures, damages to forage resources, and damages to range improvements such as fences, springs, and other water developments.

38.     Because of the damage to rangeland resources caused by excess wild horses, Plaintiffs have reduced the numbers of livestock grazed on federal and state grazing lands below permitted levels. Plaintiffs have been forced, by Defendants' inaction, to reduce the numbers of livestock on private lands impacted by excessive wild horses.

39.     There is no federal statute requiring private land owners to allow wild horses to graze on their private lands.  However, these private landowners cannot remove the horses either. The WHBA mandates that the BLM remove excess wild horses from state, federal and private land.

40.     Because of the damage to rangeland resources caused by excess wild horses, Plaintiffs have been forced to alter their operations in ways additional to reduction of livestock numbers, including hauling extra water and purchasing extra feed. Plaintiffs' grazing rotations have also been impacted.

41.     The excess wild horses are causing a general, long term deterioration of rangeland conditions.  This deterioration includes excessive use of scarce water and riparian uses, taking of

excessive amounts of forage necessary for wildlife and other animal species to survive, and causing harm to threatened, endangered and sensitive species.

42.     The large-scale damage to rangeland resources has significantly impacted Plaintiffs' livestock operations and ways of life. Many Plaintiffs have maintained their livelihoods via ranching operations for multiple generations. Due to economic limitations and the fact that the wild horses are federally-protected, Plaintiffs can do nothing to prevent damages to their private and the public rangelands.

43.     Plaintiffs and their representatives have engaged with BLM and repeatedly requested that BLM remove the excess wild horses from the range and from their private properties. However, BLM has failed and refused to do so. BLM's January, 2014, December, 2013 and September, 2013 letters to permittees show that BLM has no plans to do any gathers in 2014.

## COUNT I: AGENCY FAILURE TO ACT – FAILURE TO REMOVE EXCESS WILD HORSES *WITHIN* HERD MANGEMENT AREAS AND HERD AREAS

44.     All allegations set forth in the paragraphs above are hereby incorporated by reference as if fully set forth below.

45.     The Administrative Procedure Act, codified at 5 U.S.C. § 551, *et seq.* provides that a "person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof." *See* 5 U.S.C. § 702. "[F]inal agency action for which there is no other adequate remedy in a court" is subject to judicial review. *See* 5 U.S.C. § 704. The APA defines "agency action" as "includ[ing]

the whole or a part of an agency rule, order … or the equivalent or denial thereof, or failure to act." *See* 5 U.S.C. § 551(13).

46.     The Administrative Procedure Act provides that the reviewing court "shall (1) compel agency action unlawfully withheld or unreasonably delayed" and "shall (2) hold unlawful and set aside agency action … found to be (A) arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law."  *See* 5 U.S.C. § 706.

47.     Under WHBA, BLM is required to maintain wild horse and burro population levels "in a manner that is designed to achieve and maintain a thriving natural ecological balance" and to establish appropriate management levels for the herd, considering the relationships with other uses of the public and adjacent private lands.  *See* 16 U.S.C. § 1333(a); 43 C.F.R. § 4710.3-1.

48.     Concomitant with the duties to inventory and to determine the appropriate management levels is the mandatory duty of the Defendants to immediately remove excess wild horses "so as to achieve appropriate management levels." *See* 16 U.S.C. § 1333(b); 43 C.F.R. § 4720.1 ("Upon … a determination … that an excess of wild horses or burros exists, the authorized officer shall remove the excess animals immediately...").

49.     "All excess animals" must be removed by Defendants "so as to restore a thriving ecological balance to the range, and to protect the range from deterioration associated with overpopulation" and to preserve and maintain the "multiple use relationship in that area."  *See* 16 U.S.C. § 1333 (b)(2) and 16 U.S.C. § 1332 (f).

50.     Public ranges are to be managed for multiple uses, not merely for the maximum protection of wild horses.

16

51.     As reflected on Exhibit A, BLM has determined that excess animals exist on the Frisco HMA, the Four Mile HMA, Bible Springs HMA, Sulpher HMA, Muddy Creek HMA, and North Hills HMA, as identified in the 2013 BLM chart.  Excess horses also exist in the Blawn Wash HA.

52.     BLM has the legal duty to remove the excess animals from the Frisco HMA, Four Mile HMA, Bible Springs HMA, Sulpher HMA, Muddy Creek HMA, North Hills HMA and Blawn Wash HA.

53.     Defendants have failed and refused to immediately remove the excess wild horses and have indicated no plans to do so.

54.     Defendants' failure and refusal to immediately remove excess wild horses is unlawful and is arbitrary and capricious.  Defendants should be compelled to perform their duties under the law. *See* 5 U.S.C. § 706(1) (providing that a reviewing court "shall compel agency action unlawfully withheld or unreasonably delayed") and (2) (A) (providing that the reviewing court shall hold unlawful agency action that is arbitrary and capricious).

<u>COUNT II: AGENCY FAILURE TO ACT – FAILURE TO
REMOVE WILD HORSES FROM PUBLIC LANDS
*OUTSIDE* HERD MANAGEMENT AREAS AND HERD AREAS</u>

55.     All allegations set forth in the paragraphs above are hereby incorporated by reference as if fully set forth below.

56.     Defendants have a mandatory duty "to immediately remove" excess horses "from the range" so as to achieve "appropriate management levels."  *See* 16 U.S.C. § 1333 (b)(2).

57.     As defined, horses are "excess animals," which must be removed from an area in order to preserve and maintain a thriving natural ecological balance and multiple use relationship in that area."  *See* 16 U.S.C. 1332 (f).

58.     Defendants are obligated to remove excess wild horses from areas outside herd management areas so achieve appropriate management levels and to protect Plaintiffs' privilege and entitlement under the WHBA to graze livestock in a suitable rangeland under and in accordance with their authorized permits.

59.     The excess wild horses that exist on the public lands outside the herd management areas that Defendants have refused to remove are damaging the public rangeland, including Plaintiffs' grazing allotments.

60.     Defendants have failed and refused to remove the excess horses on public lands outside the Frisco HMA, Four Mile HMA, Bible Springs HMA, Sulpher HMA, Muddy Creek HMA, North Hills HMA and Blawn Wash HA and have indicated no plans to do so.

61.     Defendants' failure and refusal to immediately remove excess wild horses is unlawful and is arbitrary and capricious.  Defendants should be compelled to perform their duties under the law. *See* 5 U.S.C. § 706(1) (providing that a reviewing court "shall compel agency action unlawfully withheld or unreasonably delayed") and (2) (A) (providing that the reviewing court shall hold unlawful agency action that is arbitrary and capricious).

## COUNT III: AGENCY FAILURE TO ACT –
## FAILURE TO REMOVE WILD HORSES FROM PRIVATE LAND

62.     All allegations set forth in the paragraphs above are hereby incorporated by reference as if fully set forth below.

63.     The WHBA requires BLM to remove wild horses and burros that stray from public lands onto privately-owned land. *See* 16 U.S.C. § 1334.

64.     Upon notification, Defendants have a plainly prescribed, ministerial duty to remove the horses.  *See* 16 U.S.C. § 1334.

65.     Plaintiffs have notified BLM of the presence of wild horses on their private lands and requested removal. These horses cause damages to Plaintiffs' private lands.

66.     BLM has failed or refused to comply with its duties to remove the wild horses from those private lands.

67.     Defendants' failure and refusal to immediately remove the wild horses that have strayed from the public lands on to Plaintiffs' private lands is unlawful and is arbitrary and capricious.  Defendants should be compelled to perform their duties under the law. *See* 5 U.S.C. § 706(1) (providing that a reviewing court "shall compel agency action unlawfully withheld or unreasonably delayed") and (2) (A) (providing that the reviewing court shall hold unlawful agency action that is arbitrary and capricious).

## COUNT IV:  MANDAMUS RELIEF

68.     All allegations set forth in the paragraphs above are hereby incorporated by reference as if fully set forth below.

69.    Defendants have a clear legal, mandatory duty to immediately remove excess wild horses from the public lands as set forth in Counts I and II and have a clear legal, mandatory duty to remove wild horses from the private lands to which they have strayed as set forth in Count III.

70.    Defendants have a clear legal, mandatory duty to conduct wild horse gathers on and near the Frisco HMA as set forth in Count IV.

71.    Defendants have determined that there exists excess horses on the several allotments that are within or adjacent to BLM's wild horse managed areas and have failed and refused to perform their mandatory, nondiscretionary duty to remove them.

72.    Defendants' asserted excuses for non-performance of their legal duties, namely, for budgetary reasons, are not valid defenses under the law to justify their refusal and failure to perform their removal duties under the law.

73.    The Mandamus Act, 28 U.S.C. § 1361 and the APA are different means to compel an agency to take action which by law it is required to take.

## REQUESTS FOR RELIEF

For the foregoing reasons, Plaintiffs respectfully request that the Court enter judgment against Defendants and grant the following relief:

1.    Issue a declaratory judgment that BLM's failure to immediately remove excess wild horses in the Frisco HMA, Four Mile HMA, Bible Springs HMA, Sulpher HMA, Muddy Creek HMA and North Hills HMA is unlawful and in violation of the Administrative Procedure Act and enter an order compelling Defendants to immediately remove the excess wild horses;

2.      Issue a declaratory judgment that BLM's failure to remove excess wild horses from the Blawn Wash HA in which there are excess wild horses is unlawful and in violation of the Administrative Procedure Act and enter an order compelling Defendants to immediately remove the excess wild horses;

3.      Issue a declaratory judgment that BLM's failure to remove excess wild horses from the public lands, SITLA lands and private lands outside of the Frisco HMA, Four Mile HMA, Bible Springs HMA, Sulpher HMA, Muddy Creek HMA and North Hills HMA and all wild horses from the public SITLA and private lands outside of the Blawn Wash HA is unlawful and in violation of the Administrative Procedure Act and enter an order compelling Defendants to immediately remove the excess wild horses;

4.      Issue a declaratory judgment that BLM's failure to remove all wild horses from private property is unlawful and in violation of the Administrative Procedure Act and enter an order compelling Defendants to immediately remove the excess wild horses;

5.      Grant mandatory injunctive relief and mandamus relief to compel further the foregoing requested orders;

6.      Award Plaintiffs' reasonable costs, litigation expenses, and attorneys' fees; and

7.      Grant such further and other relief as the Court deems just and proper.

RESPECTFULLY SUBMITTED this 30th day of April, 2014.

**MacDONALD & MILLER MINERAL LEGAL SERVICES, PLLC**

/s/ Kiersty B. Loughmiller
Kiersty B. Loughmiller (12580)
*Attorney for Plaintiffs*